United States District Court
Southern District of Texas
**ENTERED**
December 03, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| James Tuggle, individually and on behalf of all others similarly situated, <br> Plaintiffs, <br> v. <br> Rockwater Energy Solutions, Inc., <br> Defendant. | § § § § § § § § § § | Civil Action H-18-4746 |

# Memorandum and Recommendation

Rockwater has moved to compel Aaron Plummer to arbitration. (D.E. 68.) The court recommends that the motion be denied.

## 1. *Background and Procedural Posture*

James Tuggle, the original plaintiff, filed this suit on June 15, 2018, individually and on behalf of all others similarly situated, seeking recovery of unpaid overtime wages. According to the live complaint, Rockwater failed to pay overtime compensation to flowback operators as required under the Fair Labor Standards Act.

Tuggle settled his claims through arbitration. Aaron Plummer joined the lawsuit and is now the lead plaintiff. Plummer filed a motion to conditionally certify a class on June 12, 2019. (D.E. 56.) He asks the court to conditionally certify and send notice to:

> All flowback operators who worked for Rockwater during the past [three] years who were classified as independent contractors and paid a day-rate with no overtime.

(D.E. 52 at 2.)

Rockwater argues that Plummer and potential class members are subject to mandatory arbitration. The court must consider the issue of arbitration before the motion for conditional certification. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019).

*2. The Alleged Arbitration Agreement*

Rockwater hired flowback operators through staffing companies like Energy Professionals Group LLC (EPG). A Master Services Agreement (MSA) controlled the relationship between EPG and Rockwater. The MSA required EPG to enter into arbitration agreements with the contractors it hired. Tuggle's contract with EPG included such an agreement. Rockwater provided documents showing that at least three other EPG contractors signed a similar agreement. A former EPG manager, Gareth Allen, declared that EPG's contractors were generally required to sign similar agreements. However, he stated that he "cannot personally testify" that EPG followed this process in hiring all contractors. (D.E. 80-1 at 2.) Rockwater relies on these contracts and statements to assert that Plummer is party to a contract like Tuggle's, and thus is required to arbitrate.

Plummer declared that he did not sign a written agreement with EPG and that he did not agree to arbitrate. He also declared that arbitration was never mentioned as a condition of his employment and that he had no knowledge of an agreement between EPG and Rockwater. Another former EPG contractor stated that EPG required him to sign an agreement but that it was not similar to Tuggle's contract. (D.E. 80-3 at 6.)

*3. Legal Standard*

In evaluating a motion to compel arbitration, the court must first determine whether the parties agreed to arbitrate. *Fleetwood Enters, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). "This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id*. Whether there is a valid agreement to arbitrate is a determination generally made based on state-law principles that govern contract formation. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). "Challenges to the existence—as opposed to the enforceability or validity or scope—of an agreement to arbitrate, are for a court to decide." *Vallejo v. Garda CL Sw., Inc.*, 948 F. Supp. 2d 720, 726 (S.D. Tex. 2013); see *Will-Drill Resources, Inc. v. Samson*

2

*Resources Co.*, 352 F.3d 211, 219 (5th Cir. 2003) (concluding that when "a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute"). The objective is to ensure that arbitration agreements are enforced according to their terms and the intentions of the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995).

*4. Analysis*

Rockwater has not produced a contract or arbitration agreement to which Plummer is a party. Rockwater relies on Tuggle's contract, the other employees who signed a similar contract, and testimony that it was the ordinary practice to require such contracts to show that Plummer is party to a contract like Tuggle's. Three problems exist: Plummer denies signing such a contract, one other employee says his contract was different, and the evidence is equivocal that all contractors signed agreements.

The court has given Rockwater ample opportunity to demonstrate the existence of an agreement to arbitrate. Rockwater filed a motion to compel arbitration on August 21, 2019. (D.E. 68.) In that motion, Rockwater asked the court to compel Plummer to arbitrate and to order Plummer and EPG to produce Plummer's arbitration agreement. The court entered an order on August 22, 2019, requiring production of Plummer's contract within seven days. (D.E. 69.) The court later extended this deadline per Rockwater's request. (D.E. 71.) With no progress made on the production of Plummer's alleged agreement, the court held a pretrial conference one month later and allowed Rockwater to serve subpoenas on third parties that Rockwater believed could produce the alleged agreement. (D.E. 75.) On October 24, 2019, the court held a second pretrial conference and granted Rockwater's motion for leave to serve limited depositions on written questions for the same purpose. (D.E. 78.) Rockwater has not produced an agreement signed by Plummer.

The burden is on Rockwater to establish the existence of an agreement. Although Rockwater produced some evidence that some EPG contractors signed arbitration agreements, the court must analyze the evidence as a whole and consider all circumstances. *See*

3

*Arbitration between Exceed Int'l Ltd. v. DSL Corp.*, No. H-13-2572, 2014 WL 1761264, at *8 (S.D. Tex. Apr. 30, 2014). Because Gareth Allen is not sure if all contractors signed an arbitration agreement, at least one other contractor stated he did not receive an agreement like Tuggle's, and Plummer has expressly denied agreeing to arbitrate, Rockwater has not met its burden to show that the alleged agreement exists. S*ee Moran v. Ceiling Fans Direct, Inc.*, No. H-06-0813, 2006 WL 2478837, at *5 (S.D. Tex. Aug. 25, 2006) (determining that defendant failed to show it gave plaintiffs proper notice of arbitration agreement when an agreement was not distributed to each employee, the defendant did not expressly explain the agreement, and the plaintiffs expressly denied agreeing to provisions); *see also Vallejo*, 948 F. Supp. 2d at 729 (denying motion to compel because defendant's claim that all workers were subject to the same arbitration agreement as the original plaintiff was not sufficient to overcome intervenor's express denials that they agreed to the same arbitration clause). Even if the court found that there was an agreement, the court cannot know with any certainty what its terms are.

Based on the record, Rockwater has not presented sufficient evidence to show that Plummer agreed to arbitrate.

5. *Conclusion*

Because Rockwater has failed to show that Plummer agreed to arbitrate, the court recommends that its motion to compel arbitration (D.E. 68) be denied.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal

conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on December 3, 2019.

_____
Peter Bray
United States Magistrate Judge