United States District Court
Southern District of Texas
**ENTERED**
December 03, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT　　　　　SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| James Tuggle, individually and on behalf of all others similarly situated,　Plaintiffs, § § § § § | |
| v. § | Civil Action H-18-4746 |
| § Rockwater Energy Solutions, Inc., § Defendant. § | |

# Memorandum and Recommendation

Aaron Plummer has moved for conditional certification of a class. (D.E. 56.) The court recommends that the motion be granted.

## 1. *Background and Procedural Posture*

James Tuggle, the original plaintiff, filed this suit on June 15, 2018, individually and on behalf of all others similarly situated, seeking recovery of unpaid overtime wages. According to the live complaint, Rockwater failed to pay overtime compensation to flowback operators as required under the Fair Labor Standards Act (FLSA).

Although Tuggle settled his claims through arbitration, Aaron Plummer joined the lawsuit and filed a motion to conditionally certify a class on June 12, 2019. (D.E. 56.) He asks the court to conditionally certify and send notice to:

> All flowback operators who worked for Rockwater during the past [three] years who were classified as independent contractors and paid a day-rate with no overtime.

(D.E. 52 at 2.) During the relevant time frame, Rockwater hired workers through staffing companies such as Energy Professionals Group LLC (EPG).

In its response, Rockwater asserts that Plummer is not similarly situated to putative class members, that some class members are subject to mandatory arbitration, and that some class members may be seeking recovery in another lawsuit.

## 2. Legal Standard

The FLSA requires covered employers to pay employees overtime for any workweeks longer than forty hours. 29 U.S.C. § 207(a). Employees can sue employers violating FLSA regulations both individually and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). These similarly-situated individuals have the option to join the collective action. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008).

District courts have discretion to send notice to potential opt-in plaintiffs and many courts analyze the certification process using what is commonly known as the *"Lusardi"* method. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 & n.9 (5th Cir. 2019) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). Under *Lusardi*, the district court first determines whether individuals are similarly situated at the notice stage, generally based only on pleadings and affidavits. *Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). This "fairly lenient standard . . . typically results in conditional certification of a representative class." *Id.* at 1214.

The *Lusardi* approach later requires a second determination upon a defendant's motion to decertify the class after discovery is complete. *Mooney*, 54 F.3d at 1214. Conditional certification of FLSA actions is generally favored because it often reduces litigation costs and promotes judicial efficiency. *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 466 (S.D. Tex. 2012).

## 3. Analysis

### A. Conditional Certification is Appropriate

"[T]o obtain conditional certification, the plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects

given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit." *Rodriguez v. Flowers Foods, Inc.*, No. 4:16-CV-245, 2016 WL 7210943, at *2 (S.D. Tex. Dec. 13, 2016). At this first *Lusardi* stage, the plaintiffs do not need to show that the employer violated the law, only that similarly-situated employees allege similar violations. *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010). The "determination centers on whether a factual nexus exists between the proposed members of the class such that the grouping promotes judicial efficiency." *Loy v. Rehab Synergies, LLC*, 366 F. Supp. 3d 847, 853 (S.D. Tex. 2019).

### i. Aggrieved Individuals Exist

"Under this first element, the plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012). Since the original complaint was filed in June 2018, nine additional individuals have consented to join the suit. (D.E. 6, 15, 44, 45, and 64.) Both Plummer and Kevin Cromwell, a former contractor who consented to join, stated in their declarations that they regularly worked more than forty hours per week, did not receive overtime, and were paid a day-rate. Both stated that they know of others interested in joining the suit. Thus, Plummer has shown that other aggrieved individuals exist. *See Baucum v. Marathon Oil Corp.*, No. H-16-3278, 2017 WL 3017509, at *4 (S.D. Tex. July 14, 2017).

### ii. Similarly Situated to Plaintiff

To demonstrate this second element, plaintiffs must show that putative class members were affected by a common policy, plan, or practice. *McKnight*, 756 F. Supp. 2d at 803–04 (collecting cases). Potential class members should be similarly situated in terms of job requirements and payment provisions but need not be identical. *Heeg*, 907 F. Supp. 2d at 862. "If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate." *Id.* at 863.

The declarations of Tuggle, Plummer, and Cromwell stated that wellsite contractors performed the same general duties and regularly

3

worked more than 40 hours per week without receiving overtime. Although they worked at different locations, they described similar job requirements, responsibilities, and pay practices. They all declared that they know others with similar experiences.

Rockwater asserts that Plummer is not similarly situated to all day-rate flowback contractors because he only worked at two well sites. However, "a plaintiff need only provide substantial allegations that class members were victims of a single, decision, policy or plan." *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *3 (W.D. Tex. Oct. 5, 2015); *see Malaska v. Saldivar Coastal Svcs., Inc.*, No. 2:16-CV-117, 2017 WL 1452584, at *8 (S.D. Tex. Apr. 20, 2017) (granting certification after determining that defendant did not represent that pay practices differed between locations and plaintiff's allegations provided a reasonable basis to conclude the same policy applied to multiple locations).

Rockwater does not allege that the pay practices differed by location. Tuggle described the same pay practices while working in Texas that Plummer described in Oklahoma. *Compare* (D.E. 17-1) *with* (D.E. 56-1). Former Rockwater manager Levi Evans declared that contractors performed work at various well sites in multiple states. (D.E. 57-2 at 3.) Although Rockwater asserts that Plummer should provide testimony from multiple work locations and from different staffing companies, testimony is not required at this stage. *See Vargas v. HEB Grocery Co., LP*, No. SA-12-CV-116-XR, 2012 WL 4098996, at *2 (W.D. Tex. Sept. 17, 2012) (noting that a plaintiff need only make a "modest factual showing" at this preliminary stage). Thus, Plummer has provided the substantial allegations needed to meet this element.

Rockwater's contentions that some contractors were paid hourly is not relevant to the claims at issue, as only day-rate contractors are included in the putative class. *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226–27 (5th Cir. 2011) ("There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented."); *White v. KSW Oilfield Rental, LLC*, No. H-18-1983, 2018 WL 6019178, at *3 (S.D. Tex. Nov. 16, 2018) (concluding that

4

named plaintiffs paid at an hourly rate were not similarly situated to the putative class of day-rate employees).

Rockwater's argument that the economic realities test should prevent conditional certification is not determinative at this lenient stage. *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (stating that the economic reality test can be "very fact dependent"); *Tamez*, 2015 WL 7075971, at *5 (finding that certification is justified if it is reasonable to believe that "the economic realities test can be applied to the class as a whole" after further discovery); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *4 (N.D. Tex. Nov. 29, 2012) ("This is a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage of a collective action.").

At this stage, Plummer sufficiently alleged that a common practice affected putative class members and a collective grouping could promote judicial efficiency.

### iii. Desire to Opt-in

The third element requires a showing that there is at least some interest to opt-in to the lawsuit. *Walker*, 870 F. Supp. 2d at 472. Because the litigation has already attracted several individuals to file a notice of consent to join, Plummer has met this requirement. *See id.*; *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *8 (S.D. Tex. Nov. 19, 2007).

Under the lenient standard, the court recommends that conditional certification be granted.

### B. Arbitration Agreements

According to Rockwater, some members of the proposed class are subject to a valid arbitration agreement. Rockwater seeks to enforce arbitration agreements between staffing companies and flowback operators despite Rockwater not contracting with flowback operators directly.

Rockwater presented two contracts: (1) a Master Services Agreement (MSA) between EPG and Rockwater's predecessor; and (2) Tuggle's Independent Contractor Master Services Agreement (IC-MSA) with EPG. Rockwater argues that these two contracts, both of

which contain arbitration clauses, taken together, require Tuggle to arbitrate his claims. In fact, after Rockwater moved to compel Tuggle to arbitrate, Tuggle agreed to do so. Rockwater has offered some evidence that other contractors like Tuggle entered into an agreement containing an arbitration clause. Rockwater argues that those employees should be compelled to arbitrate their claims. The court agrees.

The MSA contemplated that EPG would supply consultants like Tuggle to work for Rockwater. The MSA also contemplated that EPG would enter into an IC-MSA with each contractor it supplied. The MSA required EPG to include arbitration agreements in its contracts with these consultants. Tuggle's IC-MSA includes an arbitration agreement that requires the parties arbitrate any claims or disputes related to Tuggle's consulting work.

Whether there is a valid agreement to arbitrate is a determination generally made based on state-law principles that govern contract formation. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). Oklahoma law, which controls Tuggle's IC-MSA, allows a non-signatory "to enforce an arbitration clause when the dispute arises out of or relates to the agreement containing the arbitration clause." *B.A.P., LLP v. Pearman*, 250 P.3d 332, 337 (Okla. Civ. App. 2011). By enforcing the arbitration clause, the non-signatory is agreeing to arbitrate while "[t]he signatory is merely being held to his previous agreement to arbitrate." *Carter v. Schuster*, 227 P.3d 149, 156 (Okla. 2009). The question is whether Tuggle's dispute with Rockwater arises out of or relates to his IC-MSA with EPG. It does.

Section 14.1 of the IC-MSA requires Tuggle to arbitrate "any claim, dispute, or controversy arising out of, or relating to, this agreement, [or] the consulting services." Section 14.2 "expressly prohibits class collective actions against the Company, for example, collective actions under the [F]air [L]abor [S]tandards [A]ct or any similar law." Tuggle's original claim sought recovery under the FLSA and was based on the consulting work described in the IC-MSA. The IC-MSA governs the relationship between Tuggle and Rockwater. The cover page of the IC-MSA states that Tuggle would be working for Rockwater. (D.E. 21-1 at 3.) Tuggle would have no relationship with

6

Rockwater without the IC-MSA. The IC-MSA defined the services Tuggle would perform for Rockwater in section 1; set his pay rate in section 3; and defined his role as an independent contractor in section 11. These things are at the center of the dispute. Tuggle's claims against Rockwater thus arise from and relate to the relationship born out of the IC-MSA.

"A signatory plaintiff cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Brown v. Bob Moore Auto Group, LLC*, No. CIV-19-409-R, 2019 WL 3976848, at *6 (W.D. Okla. Aug. 22, 2019) (citing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011)). Because Tuggle sought recovery based on the relationship created by the IC-MSA, he was required to arbitrate the claims arising out of that same agreement.

The Fifth Circuit recently held that courts may not send notice of an FLSA action to employees with a valid arbitration agreement that would prohibit the employee from participating in the action. *In re JPMorgan*, 916 F.3d at 501. "[A]n employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee." *Id.* at 502–03. If the employer cannot meet its burden, the employee would receive notice of the lawsuit. *Id.* at 503.

To the extent that a putative class member has a contract like Tuggle's, that contractor would be required to arbitrate and should not receive notice of the collective action. Rockwater would have the burden to show that each arbitration agreement applies to each potential plaintiff. *See Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) ("Defendants, as the parties seeking to compel arbitration, have the burden to show that the arbitration agreement applies to the nonsignatory plaintiffs.").

"As in the class-action context, [the] court has the power to modify an FLSA collective action definition on its own." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL

7

5204149, at *3 (S.D. Tex. Dec. 11, 2008) (citing *Baldridge v. SBC Comm'cns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005)). The court recommends limiting the conditional certification to exclude operators that Rockwater can demonstrate are subject to arbitration. *See, e.g., Qazi v. Stage Stores, Inc.*, No. 4:18-CV-780, 2019 WL 2523564, at *3 (S.D. Tex. June 18, 2019); *Allen v. Hartford Fire Ins. Co.*, No. 6:16-cv-1603-Orl-37KRS, 2017 WL 3701139, at *12 (M.D. Fla. Aug. 25, 2017).

### C. Separate Collective Action

In another pending suit, oilfield workers are seeking to recover unpaid overtime wages from EPG. *See Nigh v. Energy Professionals Group, LLC*, No. 4:18-cv-01103 (S.D. Tex. filed Apr. 9, 2018). Rockwater argues that conditional certification should be denied because some of the proposed class may recover under *Nigh*, which could significantly increase the complexity of individualized damages calculations.

"Because individualized assessments of damages must be made in nearly every FLSA case that involves multiple plaintiffs, differences in the amount of damages due to each putative class member will not defeat conditional certification under the FLSA as long as all damages are the result of the alleged class-wide injury." *Trevino v. RDL Energy Svcs. LP*, No. Civ. A. H-14-1936, 2016 WL 11477431, at *18 (S.D. Tex. July 21, 2016). "[T]he need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated." *Miller v. MV Transp., Inc.*, 331 F.R.D. 104, 111 (W.D. Tex. 2019) (quoting *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *9 (S.D. Tex. May 28, 2008)). Damages, including any offsets, can be determined later in the case.

The pending litigation in *Nigh* does not preclude conditional certification.

### 4. Conclusion

Under the lenient standard for conditional certification, the court recommends that Plummer's motion to certify be granted as follows:

8

> All flowback operators who worked for Rockwater during the past three years who were classified as independent contractors and paid a day-rate with no overtime.

The court recommends limiting notice to exclude operators who agreed to arbitrate their claims.

The court orders the parties to confer regarding timelines and content of notice and to submit a proposed notice to the court within seven days. To the extent that the parties disagree on particular details the court orders the parties to file a joint status report concerning their disagreements within seven days. If necessary, the court will schedule a hearing.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on December 3, 2019.

_____
Peter Bray
United States Magistrate Judge